209          555
31 SC   229

# Pennsylvania Telephone Company, Appellant, v. Hoover.

*Telephone companies—Eminent domain—Act of April 29, 1874, sec. 33, P. L.* 73.

Under the Act of April 29, 1874, sec. 33, P. L. 73, telephone companies have no right of eminent domain over the private lands of individual owners.

Argued May 24, 1904. Appeal, No. 6, May T., 1904, by plaintiff, from decree of Superior Court, March T., 1903, No. 21, reversing decree of C. P. Dauphin Co., Equity Docket, No. 298, continuing preliminary injunction in case of Pennsylvania Telephone Company v. Charles Hoover. Before MITHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from Superior Court. See 24 Pa. Superior Ct. 96.

*Error assigned* was decree of Superior Court.

*Addison Candor,* with him *John E. Fox* and *C. La Rue Munson,* for appellant.

*William W. Porter* and *William H. Middleton,* for appellee.

OPINION BY MR. JUSTICE BROWN, June 15, 1904:

If a telegraph company does not possess the right of eminent domain, authorizing it to construct its lines upon private property in the exclusive use and enjoyment of the owner, it is conceded that such right is not possessed by a telephone company. If a telegraph company possesses this high right, it is conferred by clause 1, sec. 33, of the Act of April 29, 1874, P. L. 73, which authorizes the company "to construct lines of telegraph along and upon any of the public roads, streets, lands or highways, or across any of the waters within the limits of this state." No other part of the act need be read to ascertain whether the right to take private land has been expressly conferred. In the words quoted, or nowhere, is the express grant of it to be found. Whether tested by the com-

mon understanding of these words as collocated, or read in the light of strict grammatical construction, the qualifying word " public " applies to each of the four following it, and the phrase can mean only " public roads, public streets, public lands or public highways ; " but, that the appellant's claim of the high sovereign right to take private property for its corporate purposes ought to be sustained, we are asked to read the words as if written " public roads, public streets, private lands or public highways." Even the lay mind could hardly be reasoned into such a forced reading of them, and the eye of the law must not be strained to see in them the grant of the power claimed.

Our attention is directed to other portions of the act as indicating the legislative intention that the word " lands " was intended to include purely private property. It is urged that the words in clause 2 of section 33, " in all cases where the parties cannot agree upon the amount of damages claimed, or by reason of the absence of legal incapacity of the owner or owners no such agreement can be made for the right to enter upon lands or premises for the purposes named in this section, the company shall tender a bond, or have the same filed in the manner provided in the 41st section of this act, and the proceedings be had as therein set forth," indicate the legislative intention that private lands can be taken by a telegraph company. The answer to this, in the absence of express legislative direction that they can be so taken, is, that ownership of property abutting along a public road or highway extends to the middle of it, and, when an additional servitude is imposed upon it, the owner of the fee is entitled to compensation for the increased burden upon his " lands or premises." Again, the 41st section is cited as indicating the legislative intention, because it is there provided that in all cases in which any corporation is permitted to take waters, streams, lands, property, materials or franchises for the public purposes thereof, and it cannot agree with the owner or owners for the compensation proper for the damage done, or likely to be done, the damages are to be secured, ascertained and paid as therein provided. This section is general, and applies to the corporations that are expressly permitted by the act to take private lands, such as a water company, which, by section 34, clause 2, is, in ex-

press words, given the right " to enter upon such lands and enclosures " as may be necessary for it, " and, if any injury be done to private property," compensation is to be made therefor in accordance with the 41st section of the act. The legislature having by this 'act expressly conferred on certain corporations the right to take private lands it must be regarded as withheld from the others to be incorporated under the same act to which the right is not given.

That the appellant must try to persuade us that we ought, by reading the act with it, discover that it possesses the right to take private property, instead of being able to at once point directly to the words clearly conferring such right, is conclusive that the same does not exist. There must be no effort to prove the existence of such high corporate right, else it is in doubt ; and, if so, the state has not granted it. " All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other : " Lewis on Eminent Domain, sec. 254. " That which a company is authorized to do by its act of incorporation, it may do ; beyond that all its acts are illegal. And the power must be given in plain words or by necessary implication. All powers not given in this direct and unmistakable manner are withheld. . . . If you assert that a corporation has certain privileges, show us the words of the legislature conferring them. Failing in this, you must give up your claim, for nothing else can possibly avail you. A doubtful charter does not exist; because whatever is doubtful, is decisively certain against the corporation " : Commonwealth v. Erie & N. E. R. R. Co., 27 Pa. 339. In Woods v. Greensboro Nat. Gas Co., 204 Pa. 606, cited to us by the appellant, this same rule was again reannounced and nothing at all was intimated as to the power of a telephone company. All that was said was, that if the exigencies of the business of the gas company should require the use of a telephone line, the company could obtain authority to construct one by securing in its interest a charter for that purpose ; but such line could be construed and maintained only within the corporate powers and privileges of the telephone company.

We cannot agree that a denial of the right of the appellant

to enter upon private lands will defeat the grant of its franchise to construct and maintain a telephone line, and that, as the right arises from absolute necessity, the legislature intended to confer it. As a rule, attested by daily observation everywhere, telegraph and telephone lines are on the streets or public highways, and when, very occasionally, they are over private property, they are there merely for the advantage of the company, and not because the efficiency of its service will be diminished by keeping on public roads. It is not needful that we say more in support of the decree of the Superior Court dismissing appellant's bill. In all that was said by that court, Penna. Telephone Co. v. Hoover, 24 Superior Ct. 96, we concur, and, if we were to add more, it would be but a repetition of the views there expressed.

Decree affirmed and appeal dismissed at appellant's costs.