## South Penn Telephone Company v. Stockdale.

*Corporations — Telegraph companies—Unincorporated company—License to use land—Revocable license—Prescriptive right of user by incorporated company.*

1. Where an owner of land grants by parol to an unincorporated association of farmers, without the right of eminent domain, a license to extend telephone lines over his lands, such license is revocable and not assignable.

2. Where such owner is a member of the association, the president and secretary thereof cannot, without authority of the members or consent or knowledge of the owner, sell and transfer the rights under the license.

3. The transferee of such rights cannot acquire against the owner, by use of the lines for over twenty-one years, a prescriptive right to continue their use, and this is especially so where it appears that the owner had in fact canceled the license as against his original licensee.

4. But where an incorporated telephone company with the right of eminent domain has openly maintained for thirty-three years a line of telephone wires, without dispute or denial of the rights by the land owner, it will be presumed to have acquired a permanent, irrevocable license, such as it had a right to acquire by condemnation.

5. In such case, if the owner interferes or threatens to interfere with the operation of the lines, he will be restrained by injunction.

Bill in equity. C. P. Greene Co., No. 260.

*Waychoff & Waychoff*, for plaintiff; *J. A. Garrison*, for defendant.

SAYERS, P. J., Oct. 4, 1926.—The bill in this case prays for an order restraining the defendant from interfering with the plaintiff company in repairing, replacing or removing its poles and lines over two rights of way on defendant's land, and in interfering with the free and uninterrupted use of said lines by plaintiff company and its patrons. The bill of complaint was filed Feb. 9, 1924, and was served on the defendant Feb. 20, 1924, and he filed his answer thereto on June 16, 1924. A hearing was had on the bill and answer on Nov. 12, 1924, and testimony taken, and the testimony was transcribed and filed April 19, 1926.

Testimony was taken before the Hon. J. W. Ray, judge of the 13th judicial district at the time, who has since retired from office. The papers in this case, without the testimony, were submitted to the court on Feb. 15, 1926, and after examination of the papers and finding that the testimony had not then been transcribed or filed, the court, by order of April 10, 1926, returned the papers to the files and directed the solicitors for both plaintiff and defendant to submit to the court, within ten days after notice of said order, such request for findings of facts and conclusions of law as they deemed necessary. On April 19, 1926, the testimony was filed, and on May 22, 1926, the plaintiff, by its solicitor, filed request for findings of fact and conclusion of law. No requests were filed by the defendant and the papers were handed to the court the next argument day thereafter. From the evidence submitted to the court in this matter the court makes the following

### Findings of fact.

1. The South Penn Telephone Company, the plaintiff, is a public service corporation engaged in constructing, maintaining and operating telephone lines throughout the County of Greene, in the State of Pennsylvania, and in supplying telephone service to the general public of Greene County, Pa., and parts of Washington and Fayette Counties, Pa.

2. The defendant, Thomas J. Stockdale, is a farmer, who is a citizen and resident of Washington Township, Greene County, Pa.

3. The defendant is the owner of a tract of land in said township, county and State, which he purchased from A. S. Johns, sometimes known as "Bert" Johns, which said tract of land defendant owns in fee simple, excepting and reserving the Pittsburgh or river vein of coal and certain mining rights which had previously been sold. The acreage and description of this farm does not appear in the pleadings or the evidence. When the defendant bought this farm from A. S. Johns, there were two lines of poles occupying two apparent and separate easements or rights of way across this land, on each of which were strung certain telephone wires. One of these lines appears originally to have been constructed by an association of about twenty farmers for the convenience of themselves and their neighbors residing in the Ruffs Creek District of Washington Township, and this company was known as the Ruffs Creek Telephone Company. This mutual or farmers' telephone company undertook to construct a local telephone system for the use of the various members of the company and their neighbors, each member contributing to the building of the line by giving it the necessary right of way for the construction of the line, and in some instances furnishing poles and helping to build the line. The Ruffs Creek Telephone Company was never incorporated, but was simply operating by mutual agreement, in part evidenced by a written constitution, for the accommodation of the members of the organization and their neighbors, and had no right of eminent domain.

4. The Ruffs Creek Telephone Company was organized about the year 1905, about nineteen years before the beginning of this suit, and it continued to maintain and operate its line, including the right of way across the A. S. Johns farm, originally known as the Abner Johns farm, down until Oct. 28, 1922, when it sold its right of way and the wires which it owned and all poles occupying said right of way across the land now owned by the defendant, Thomas J. Stockdale, to the South Penn Telephone Company, plaintiff, reserving for the use of the Ruffs Creek Telephone Company one of the lines that were strung on the poles over the right of way of the said Ruffs Creek Telephone Company.

5. At the time of the organization of the Ruffs Creek Telephone Company and the building of its lines, it was agreed that each member of the organization should buy his own telephone box and, in addition thereto, should pay 15 cents a month, called switch fees, for the purpose of creating a fund to take care of the central office expenses. From time to time the switch fee was gradually increased until about the year 1912, when it amounted to 50 cents per month for each telephone user.

6. The defendant, Thomas J. Stockdale, moved onto the land about May 4, 1910, and both telephone lines involved in this dispute were then built over and across the land, and the two easements or rights of way were occupied by a line of poles, the Ruffs Creek Telephone Company having eleven poles on this land. The defendant knew of the two telephone lines or easements which were across his land at the time he purchased it. He purchased the land from Albert S. Johns, who had acquired title thereto from his father, Abner Johns.

7. It does not clearly appear from the evidence, but there is some ground for the inference, that the defendant continued to use the telephone box and line connections as they were in the house on the farm formerly occupied by A. S. Johns up until about March, 1913, when some controversy arose between the defendant and the Ruffs Creek Telephone Company as to the use of the right of way over the farm or their right to repair the poles occupying the easement then on the land. The defendant had some trouble with the company about switch fees and was ordered by the company to get off the line,

but about the time of their meeting in March, 1913, they settled their difference with the defendant, who agreed to place a phone at his own cost at $20 per year and to assume the payment of the same switch fees that the rest of them were paying, which, at that time, was 50 cents per month, or $6 per year. At that time, Mr. Stockdale agreed that the easement and line occupied by the Ruffs Creek Telephone Company should be changed from above or near a road so that it would extend straight across his bottom land, and he assisted the Ruffs Creek Telephone Company in erecting the poles for the new lines, cutting down some bushes and small trees, agreed to the location of the poles, and was hired to work for the company in building said line and was paid by them for his work. It was agreed that the defendant should purchase the box at $20 and should pay the additional switch fees from time to time, whatever they might be.

8. The Ruffs Creek Telephone Company continued to operate and use the line over the farm of the defendant and the defendant continued to use the telephone under his contract with the company until the switch fees were raised to 75 cents per month, or $9 per year, and then the defendant commenced to complain, sometime prior to October, 1922, that the Ruffs Creek Telephone Company was not complying with its contract to furnish him with telephone service at $6 per year and denied their right to continue to longer occupy their easement and to maintain their line of poles and wires over his land.

9. The second line of poles was erected and an easement occupied across this land by a company originally known as the Standard Telephone Exchange, which commenced business about 1889 and constructed a line from Waynesburg to Washington on and over the Abner Johns farm, now owned by the defendant, in March, 1889. The workmen building the line boarded at the house of Abner Johns, who furnished them some of the poles that were used in building the line that was then being constructed across his land.

10. The Standard Telephone Exchange Company continued to occupy the easement and right of way across the Johns farm up until 1916 without any objection or interference or denial of right whatever by Abner John, or any other owner of said land, including the defendant, at which time they sold and transferred their easement, property and right of way to the South Penn Telegraph and Telephone Company, a public service corporation engaged in erecting, maintaining and operating lines of telephone throughout Greene County and adjoining territory, and the South Penn Telephone and Telegraph Company was reorganized about 1920 and became the South Penn Telephone Company, a public service corporation, which acquired all the rights, privileges and property of the Standard Telephone Exchange Company and the South Penn Telephone and Telegraph Company.

11. It does not appear from the evidence that the rights of way, grants or privileges to the Ruffs Creek Telephone Company or the Standard Telephone Exchange Company were ever reduced to writing or made a matter of record, but it does appear that these easements were occupied and used, the one by the Ruffs Creek Telephone Exchange Company and its successors in title from sometime in the year 1889 up until 1922, without any interruption, hindrance or denial of their right to occupy said easements over the land belonging to the defendant and his predecessors in title, until their right was disputed by the defendant at the beginning of the year 1922.

12. The dispute over the plaintiff's rights of way began between defendant, Thomas J. Stockdale, and the Ruffs Creek Telephone Company about the beginning of the year 1922, or about the time the switch fees were raised from

$6 to $9, and he denied their right to continue to occupy the easement across his land, and by threats and actions intimidated and prevented the Ruffs Creek Telephone Company from maintaining and using its easement and lines of telephone across said lands and from enjoying the same as it had a legal right to do.

13. Shortly after the Ruffs Creek Telephone Company had transferred their easements, rights and property to the South Penn Telephone Company, the defendant commenced to interfere with the right of the workmen employed by the company to enter upon the land and repair the poles and lines, which interference consisted in part in short-circuiting the lines or in connecting two lines together and interrupting the service rendered to the patrons of the company. It appears that he was arrested for malicious mischief and his case was settled before a justice of the peace. He continued to harass the company by cutting a guy wire and letting a pole fall over and refusing them the privilege of entering upon the land and reconstructing that part of the line where the poles had blown or fallen down, in one instance sitting on the cross-arm of the pole, preventing them from erecting it. He also, by his language and conduct, implying a threat to shoot, intimidated the manager and employees of the plaintiff company to the degree that they did not think it was safe to enter upon the lands to repair their lines.

14. For about two years prior to commencement of this suit, the defendant has prohibited the plaintiff from repairing its line, claiming that it has no right of way and is not entitled to repair and keep up its lines, which the court finds are necessary for the proper transaction of the public business of plaintiff company. In order to prevent the defendant from continuing to interfere with the use and control of their easements, rights and property, the plaintiff filed the bill in this case.

## Discussion.

"The easement acquired in land condemned for the purpose of a telegraph or telephone line consists of the right to occupy the land with poles and fixtures for guy wires and the right to enter for the purposes of erecting and maintaining the line, and to use the structure for the purpose for which it was condemned. In the construction of the line the branches of trees may be trimmed when necessary. Additional poles and wires may be erected when the necessities of the business require it. The only exclusive right of occupancy which is acquired is the occupancy of the land where the poles are erected. The owner may, therefore, use the remainder of his property in any manner not inconsistent with the easement acquired." 20 Corpus Juris, 1232.

The Act of April 29, 1874, § 33, P. L. 92, relating to lines of telegraph, subsequently construed to include telephone companies, authorizes the construction of lines "along and upon any of the public roads, streets, lands, highways or across any of the waters within the limits of this State by erection of necessary fixtures." The word "lands" is qualified by the use of the word "public" by the following decision, consequently, under this section, a telegraph or telephone company has not the right of eminent domain over the private lands of any person: Pennsylvania Telephone Co. v. Hoover, 209 Pa. 555; Pfoutz v. Pennsylvania Telephone Co., 24 Pa. Superior Ct. 105. It, therefore, follows that telephone companies having the right of eminent domain have no right to condemn a telephone line over private lands except upon and over roads, streets and highways. It is common practice for telephone companies to secure from land owners the grant of a right of way or easement for poles and wires, to cross private lands without confining the right of way to

roads, lanes and highways, but a telephone company cannot enforce such right
by condemnation.

There being in existence no writing showing how the plaintiff's predeces-
sors in title acquired their rights of way over defendant's land, it becomes
necessary to ascertain from the facts in this case whether plaintiff had a
revocable license to enter upon and over those lands, or a perpetual easement.
The facts as to the original entry on the land by each of these lines, which we
will designate as the Ruffs Creek line or company and the Standard line or
company, are substantially the same. Both lines were erected, built, used and
maintained with the consent and acquiescence of the original owner, Abner
Johns, who knew of each of them being built over his lands, who boarded the
men constructing the lines, and who assisted or took part in the construction
of both lines, and furnishing poles to be used therein in one instance. The
Standard line was constructed thirty-three years before its right to use its
easement was questioned and more than thirty-five years before this suit was
brought, and that company had then the right of eminent domain. The Ruffs
Creek line was built about nineteen years before suit was brought, by a part-
nership or association having no right of eminent domain. The Standard line
occupied its rights of way peaceably, openly, visibly, adversely and without
interruption or objection down to about the time of the beginning of this suit.
The Ruffs Creek line occupied its right of way in the same manner, except
defendant objected to the switch fees and brought about the dispute which
arose in 1913, when the same was changed from the road to the bottom lands
of the defendant. There was no other controversy over either of these lines
until in 1922, when defendant denied plaintiff's right to occupy either and
both of said rights of way. With the exceptions of the controversy about the
Ruffs Creek line in 1913, both rights of way were openly, visibly and con-
tinuously used, and it matters little to this case whether you call them ease-
ments, servitudes or merely irrevocable licenses: Tide Water Pipe Co. v. Bell,
280 Pa. 104, 114 and 115. The present defendant had notice of these rights
of way over his land when he purchased it; consequently, his rights rise no
higher than his predecessors in title: Leininger v. Goodman, 277 Pa. 75, 78.

There is no claim of right on the part of plaintiff to any special rights or
free services granted in connection with the right of way of the Standard line,
but there is such claim as against the right of way which belonged to the
Ruffs Creek Company. It is the plaintiff's claim, and he testified, that in
1913, when the Ruffs Creek line raised its switch fees, and again in 1922,
when the same thing occurred, that the telephone companies were violating the
agreement originally made by the Farmers' Association for mutual conve-
nience, and thereby forfeited their right or claim to an easement or right of
way over defendant's land. The gist of defendant's claim generally, however,
is expressed in the sixth paragraph of his answer, which sets forth "that
plaintiff has no easement or right of way over my premises and never did
have. That whatever use has been made of my premises was a permissive
use, by favor and courtesy and by permission of myself and my predecessors
in title, and was revocable at all times and was so recognized and understood
by the parties who erected said lines."

In the absence of proof to the contrary showing a definite contract or con-
demnation, and in the face of claims and rights asserted by the defendant, in
less than twenty-one years after the entry of the Ruffs Creek Company upon
the said right of way, it having no right to condemn or occupy the land with-
out the owner's permission, it is a fair presumption of law that the original
occupancy was permissive and was to continue only so long as it was satis-

factory to the land owner. The Ruffs Creek Company occupies its right of way by virtue of a parol license, the result of an arrangement for the mutual convenience of twenty farmers. "When the owner of land, with full knowledge of the facts, tacitly permits another repeatedly to do acts upon the land, a license may be implied from his failure to object:" Leininger v. Goodman, 277 Pa. 75, 78. "That such a license is a personal privilege and not assignable is a well-settled principle. It is induced almost always by confidence in the character of the licensee. A man may well accord a privilege upon his lands to one person which he would refuse to all others. Hence, it is held that a personal license is not assignable and that an assignment by licensee determines his right. Though a licensor may be estopped from recalling the privilege granted, the licensee may destroy it. He may abandon or release. He cannot substitute another to his right. The cases are numerous in which it has been held that his assignment puts an end to the license:" Dark v. Johnston, 55 Pa. 164, 171.

The manner of organization of the Ruffs Creek Company indicates that the license was in the nature of a mutual personal privilege and was not intended to be assignable. The constitution of the Ruffs Creek Company, section 10 (page 36 of the evidence), reads as follows: "The property of this company shall not be transferred or sold to any other company without a full vote of all the members at the time of the sale. And in case of sale, the money accrued from said sale shall be divided pro rata among the members." This was the working agreement under which the Ruffs Creek Company was organized, and it is not pretended by the plaintiff that the sale in this case, made to the South Penn Telephone Company, was in accordance with this provision of the constitution of the Ruffs Creek Telephone Company. John Meek, who is president of the Ruffs Creek Company, testified that there was no action taken by the Ruffs Creek Company at the time he signed the article of agreement on Oct. 28, 1922 (Exhibit A), as president of the Ruffs Creek Telephone Company, conveying to the South Penn Telephone Company that part of the Ruffs Creek lines then on and over the lands of Thomas J. Stockdale, the defendant. Mr. Meek says he talked to a number of the members of the company individually, and they agreed to the sale, but he says expressly that he did not talk to every member of the company.

It needs no further argument to show that the sale of the Ruffs Creek Company was made to the South Penn Telephone Company by its president and secretary without proper authority from the members of the association. The right of way of the Ruffs Creek Company over the Thomas J. Stockdale land having been granted it by virtue of a parol license, it was not assignable, particularly by the company or association, without the consent of Thomas J. Stockdale, as provided in their constitution. This is not the case of a license to do something on the licensor's land, followed by the expenditure of money on the faith of it, which renders it irrevocable and requires that it be treated as a binding contract, as in the case of Huff v. McCauley, 53 Pa. 206. Much less so is this the case, because the predecessors in title of the licensor stipulated that the property of this company should not be transferred or sold to any other company without a full vote of all the members at the time of sale and the proceeds of sale divided. It is immaterial whether this clause means that all the members of the company should meet and unanimously approve the transfer or sale of the property, or that they should meet and have an opportunity to vote, and that a majority of the company might approve the transfer and sale. The sale that was consummated was only of that part of the Ruffs Creek Company's lines as were on and over the prop-

erty of Thomas J. Stockdale; was made without his knowledge or consent or vote being asked, and he got no part of the consideration or any consideration for it. The evidence discloses here that no meeting was called or held, no vote was taken, and the easement over the defendant's farm, together with his right in the Ruffs Creek Telephone Company, was transferred without such knowledge or consent, and in the face of an express agreement on the part of his associates that he should have an opportunity to vote on the question.

In view of these facts, it is the opinion of the court that the transfer of the easement or right of way of the Ruffs Creek Telephone Company to the South Penn Telephone Company did not pass any title thereto to the South Penn Telephone Company, and they have no rights therein which can be successfully enforced or protected by the injunction which is prayed for in this bill of complaint.

In Equitable Gas Co. v. Limegrover, 54 Pa. Superior Ct. 250, 256, there was a dispute concerning the right of plaintiff to occupy a telephone right of way over defendant's land, and the court said: "It is a well-established principle that the conduct of the parties is to be considered in construing an ambiguous contract, and the silence of the defendants for so long a time with knowledge of the daily use of the line gives complexion to the meaning of the parties." We are not construing an ambiguous contract. The arrangement whereby the Ruffs Creek Company occupied the right of way is as consistent with a license or permissive use for mutual benefit, as long as the same was satisfactory to the land owner, and much more so, than to assume, without evidence of a writing and with no right to acquire these privileges by eminent domain, that plaintiff's predecessor in title, the Ruffs Creek Company, has now acquired a perpetual easement by prescription or limitation, under the facts in this case. The occupancy of the Ruffs Creek Telephone Company and the control over this right of way was permissive and could not amount to more than a parol license which was revocable by the licensor. The case of the Standard Telephone Company stands on different ground. The Standard Telephone Company having the right of eminent domain, and having apparently exercised it for thirty-three years without dispute or denial of its rights, it is not now to be supposed that its right to occupy the premises had its inception in a mere license, revocable at pleasure and not transferable; but, on the contrary, after such a lapse of time, for want of a writing or agreement, a prescriptive right will and should be legally presumed. After all these years, the Standard Telephone Company will be presumed to have taken and paid for that which they were legally entitled to take or condemn. This presumption weighs so strongly in the Standard Telephone Company's favor that the burden of proof that the original entry was not in pursuance of an original grant or consideration and that the damages were not paid for and settled is upon the defendant. The situation calls for proof on his part that plaintiff was a trespasser or entered in pursuance of a revocable license, privilege or permission. This is a burden defendant must assume, and this he utterly fails to do by any evidence presented to the court, or to refute the presumption that the entry was lawful and the damages paid.

It is not contended that a corporation with the right of eminent domain could not be a mere licensee, or that every license would ripen by lapse of time into a prescriptive right; but a license to build, maintain, equip and operate a telephone line, made to a corporation having the right of eminent domain, will not be presumed, after it has exercised its privileges over certain lands uninterruptedly for thirty-three years and without dispute, since these

South Penn Telephone Company v. Stockdale.

privileges are the very essence of its being, the thing which it was organized and authorized by law to do. It is, therefore, a fair legal presumption, sustained by the evidence, or want of evidence in this case to the contrary, that the plaintiff and its predecessors in title, under their right of eminent domain, exercised openly, visibly, permanently and continuously, acquired a permanent irrevocable easement, such as it had a right to do by condemnation. Twenty-one years' adverse user of an easement gives rise to the presumption of a grant: Demuth v. Amweg, 90 Pa. 181. There is no foundation for any claim of right on the part of the plaintiff to any special rights or free service granted in connection with the right of way of the Standard Telephone Exchange, and this feature does not enter into a consideration of the right of the Standard Telephone Exchange, predecessor in title of the plaintiff, to occupy, maintain and use its right of way over the defendant's land.

The defendant having interfered with the right of the plaintiff company to enter upon and over his land for the purpose of repairing, reconstructing and maintaining its poles and lines of wire acquired from the Standard Telephone Exchange Company, and its managers and employees having been threatened with serious injury, as disclosed by the facts in this case, and the service to its patrons having been interrupted and interfered with, it appears to the court that the plaintiff company has no other adequate remedy at law than this proceeding, and to maintain its claim to own the right of way in dispute over this land, it has a right to maintain this bill and injunction. The acts of the defendant and his denial of plaintiff's right to enter on his farm to repair and replace the poles and wires on its right of way is a continuing trespass and may be enjoined: Kramer v. Slattery, 260 Pa. 234. It is the opinion of the court that the defendant should be enjoined from interfering with the agents, officers and employees of the plaintiff company or with its lines and property and the lawful use of the same by the plaintiff of the lines acquired from the Standard Company.

### Conclusions of law.

1. The use and occupancy by the original telephone company, the Standard Telephone Exchange, and its successors in title, of the said right of way and easement which it exercised for a period of thirty-three years was sufficiently hostile, uninterrupted, continuous, notorious and adverse and its ownership, possession and use of such long standing as to presuppose that there was an original grant or agreement by and under which its said easement was occupied, and the plaintiff is presumed, after this lapse of time, to have a right by prescription to occupy its right of way as it had done for thirty-three years.

2. The Ruffs Creek Telephone Company has no right of eminent domain and could acquire no prescriptive right to use the right of way claimed by it. It occupied the land by and under a revocable license from defendant's predecessor in title, which could not be transferred by said company. The attempted transfer to the South Penn Telephone Company of this license was illegal and not in accord with the agreement for transfer as made in the so-called constitution of the Ruffs Creek Company, and this license has been revoked by operation of law as well as by the acts and declarations of defendant.

3. The defendant having purchased the land over which the two easements in this case extend had notice of the existence of the easements and occupancy thereof by the companies, and was aware of the use and control thereof by the predecessors in title of the plaintiff company in this case at the time he purchased and occupied said land. The mere fact that he did not know of or could not find any written grant or right of way authorizing the original

South Penn Telephone Company *v.* Stockdale.

telephone companies to enter upon and use said tract of land did not furnish. him any justification or excuse for attempting to interrupt the service and control of both companies over their properties, except by action of eject- ment or other action at law to test the right of said telephone companies to occupy easements on said land.

4. The claim on the part of the defendant and his denial of the right of the Ruffs Creek Company to further occupy his land and their easement over it was based on his contract for service at a fixed rate or charge, and the com- pany not being a public service company, it was not subject to the rules of the Public Service Commission, and his license or agreement that the Ruffs Creek Telephone Company should occupy the easement was based on an under- standing on his part that the telephone company was only to occupy the land so long as they continued to furnish him telephone service for an annual switch fee of $6, and when said company failed so to do and imposed a rate or switch fee of $9 per year, then they forfeited their right to occupy the ease- ment held by the Ruffs Creek Company.

5. The defendant company had no adequate remedy at law to prevent inter- ruption of its service and to maintain its *status quo* and claim to own the rights of way in dispute over this land except by this bill in equity and injunction, and its right to maintain and hold its easement and right of way, held originally by the Standard Telephone Exchange, has been so continuously and adversely maintained for more than twenty-one years as to warrant the presumption that the right of way was originally granted to said Standard Telephone Exchange.

### Decree.

And now, Oct. 4, 1926, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That the injunction heretofore granted in this case, in so far as it applies to the poles, lines and right of way of plaintiff company formerly belonging to the Standard Telephone Exchange, be and the same is hereby continued and made perpetual; and the defendant is perpetually enjoined from in any way interfering with the plaintiff company or with its agents, officers, servants or employees in entering upon its right of way to erect, maintain, repair, rebuild or remove its poles and lines on the land of defendant originally constructed by said Standard Telephone Exchange, or in any manner interfering with said lines, poles and equipment on said right of way, or with the free and uninterrupted use of the same by said plaintiff company or its patrons.

2. That the injunction, so far as it applies to the poles, lines and right of way of the plaintiff company acquired from the Ruffs Creek Telephone Com- pany, be and the same is hereby dismissed and dissolved, and the plaintiff shall have thirty days from this date within which to enter upon this right of way and reclaim its property or to abandon the same, with notice to the Ruffs Creek Telephone Company.

3. That defendant pay the costs of this suit.

Ordered, adjudged and decreed accordingly.

The prothonotary is directed to give notice to solicitors for parties con- cerned that they have ten days from this date within which to file exceptions to the findings and decree of the court, otherwise the above will be entered as a final decree.

From S. M. Williamson, Waynesburg, Pa.